UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK

In re:                              :
                                      Docket #13cr268
UNITED STATES OF AMERICA,           : 1:13-cr-00268-JMF

                    Plaintiff,      :

  - against -                       :

ALIMZHAN TOKHTAKHOUNOV, ANATOLY     :
GOLUBCHIK, et al.,                    New York, New York
                                    : April 24, 2013
                    Defendants.
------------------------------------- :


                      PROCEEDINGS BEFORE
                THE HONORABLE DEBRA FREEMAN,
         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For the United States     U.S. ATTORNEY'S OFFICE
     of America:          SOUTHERN DISTRICT OF NEW YORK
                          BY:  JOSHUA NAFTALIS, ESQ.
                          One Saint Andrew's Plaza
                          New York, New York 10007
                          (212) 637-2310


For the Defendant         LAW OFFICES OF JEFFREY LICHTMAN
Golubchik:                BY:   JEFFREY HARRIS LICHTMAN, ESQ.
                          750 Lexington Ave, 15th floor
                          New York, New York 10022
                          (212) 581-1001




Transcription Service:  Carole Ludwig, *Transcription Services*
                        141 East Third Street #3E
                        New York, New York 10009
                        Phone:  (212) 420-0771
                        Fax:  (212) 420-6007


Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

<u>INDEX</u>

<u>E X A M I N A T I O N S</u>

| <u>Witness</u> | <u>Direct</u> | <u>Cross</u> | Re-<br><u>Direct</u> | Re-<br><u>Cross</u> |
|---|---|---|---|---|
| None | | | | |

<u>E X H I B I T S</u>

| Exhibit<br><u>Number</u> | <u>Description</u> | <u>ID</u> | <u>In</u> | Voir<br><u>Dire</u> |
|---|---|---|---|---|
| None | | | | |

1          THE CLERK:   United States v. Anatoly Golubchik.

2   Counsel, state your name for the record.

3          MR. JOSHUA NAFTALIS:   Good morning, Your Honor,

4   Joshua Naftalis for the Government.  With me is Special

5   Agent Robert (inaudible) from the FBI.

6          MR. JEFFREY LICHTMAN:  Good morning, Your Honor,

7   Jeffrey Lichtman and Jeffrey Einhorn for the defendant.

8          MR. JEFFREY EINHORN:   Good morning, Your Honor.

9          THE COURT:   Good morning.  Just give me a moment

10  to take a look at the Pre-Trial Services service because I

11  just, I'm getting it now.  So give me a sec.

12          (pause in proceeding)

13          THE COURT:   It's a lengthy indictment.  Tell me

14  which counts this defendant is charged in and what he's

15  charged with.

16          MR. NAFTALIS:   Yes, Your Honor.  The defendant is

17  charged in count 1 which is the RICO conspiracy, the RICO

18  (inaudible) count is count 2, and money laundering

19  conspiracy count which is count 5 I believe.  7.

20          THE COURT:   I'm just flipping through.  I see his

21  name elsewhere as well – 18 – all right, well, I gather this

22  is here for a bail hearing --

23          MR. NAFTALIS:   Yes, Your Honor, Judge Furman has

24  referred it in the first instance to Your Honor.

25          THE COURT:   Has he been presented?

4

1          MR. NAFTALIS:   Defendant was arrested last

2  Tuesday.  At the presentment, his counsel who was, just for

3  that appearance, consented to detention.  And then is the

4  first argument that (inaudible).

5          THE COURT:   Okay, so he doesn't need presentment.

6  It's just for a bail hearing.

7          MR. NAFTALIS:   No, he's been arraigned as well.

8          THE COURT:   Okay.  All right, so tell me a little

9  bit about – I gather there's going to be an argument here,

10  so tell me a little bit from the Government's side as to why

11  you think detention is the right way to go.

12          MR. NAFTALIS:   Yes, Your Honor, as I mentioned,

13  the defendant was arrested last Tuesday.  He is part of a

14  34-defendant indictment.  He is at the very top of this

15  indictment.  It's a RICO, RICO conspiracy, money laundering,

16  illegal gambling, extortion charges against the defendant.

17          The defendant is charged – the two people above

18  the defendant are a man named Taiwanchik who is a fugitive

19  in Russia, and Adine Trincher.  Adine Trincher, Mr.

20  Taiwanchik, and Mr. Golubchik ran a RICO enterprise.  Last

21  Tuesday Mr. Trincher made a bail application, and Judge

22  Francis ordered him detained.  Respectfully, (inaudible) did

23  not make an application there; the writing was on the wall.

24  Mr. Golubchik is in the exact same position as Mr. Trincher.

25  They are charged with the same crimes.

1          They are two of the three of this massive RICO

2   enterprise which was an international gambling operation,

3   and the exact same facts apply to each defendant, and I'll

4   go through all of them.  But we believe that he should be

5   detained as well.

6          THE COURT:  You're arguing on flight grounds?

7          MR. NAFTALIS:  Flight and dangerousness.

8          THE COURT:  Okay.

9          MR. NAFTALIS:  So I'll give you a general

10  background of the case because I know this is your first

11  exposure to it.

12         There are two RICO conspiracy charges.  One is

13  called the Taiwanchik-Trincher organization and then there's

14  another organization.  The Taiwanchik-Trincher organization

15  is an international gambling organization.  They were

16  running a huge, large-scale sports book illegally.  Their

17  clients were multi-millionaires and billionaires, oligarchs

18  in Russia.  The money was then laundered --

19         THE COURT:  I'm sorry, I just heard Russia.

20         MR. NAFTALIS:  Oligarchs in Moscow, in Russia.

21  The money was laundered through cyclers into the U.S.  We've

22  traced at least $40 to $50 million alone just through this

23  organization that Mr. Golubchik is affiliated with.  There

24  are also extortion charges related to this and then illegal

25  gambling charges.

1    So let me address, first, dangerousness to the

2  community.  As I mentioned, extortion charge.  Mr. – his

3  nickname is Taiwanchik, is what's referred to as a vor.

4  This is the top of the top of the top of organized crime in

5  Russia.  He is known to be a criminal.  He openly operates –

6  he provides protection to people.  He affiliates with the

7  highest levels of Russian government.

8    MR. LICHTMAN:   Excuse me, Judge, we're talking

9  about not this defendant, but the top defendant in the case,

10  Your Honor.

11    MR. NAFTALIS:   Yes, the coconspirator with Mr.

12  Golubchik.

13    MR. LICHTMAN:   Sorry.

14    MR. NAFTALIS:   Just to be clear, there are

15  massive amounts of wiretaps, email intercepts.  The

16  defendant is in continual contact with Mr. Tokhtakhounov,

17  Taiwanchik, which is why I mention him.  He is able to extort

18  money, payment through the fear of force and use of force.

19    THE COURT:   When you say he, could you keep me

20  clear as to who you're talking about.

21    MR. NAFTALIS:   Okay, Mr. Tokhtakhounov who is the

22  top name on the indictment.

23    THE COURT:   All right, so you talk about that

24  person, then when you shift and you start talking about this

25  defendant, then you'll let me know.

1        MR. NAFTALIS:  I will, yes.

2        THE COURT:  Okay.

3        MR. NAFTALIS:  Mr. Golubchik, Mr. Tokhtakhounov,

4  and Mr. Trincher are the three leaders of this RICO

5  conspiracy.  They're all charged with extortion, money

6  laundering, RICO, illegal gambling.

7        THE COURT:  And all I'm saying is you're talking

8  about one, I'll give you leave to be saying he this, he that,

9  he the other thing, as long as I know you're still talking

10  about that person.

11        MR. NAFTALIS:  Yes, Your Honor.

12        THE COURT:  Then if you shift gears and you're

13  talking about someone else and saying he, make sure I get it.

14        MR. NAFTALIS:  I will, Your Honor.

15        THE COURT:  Okay.

16        MR. NAFTALIS:  The defendants are charged with

17  extortion.  Part of the extortion relates to working with Mr.

18  Tokhtakhounov to extort money in fear of force and use of

19  force.  As Your Honor is aware, the Second Circuit has made

20  clear that being a leader of a criminal enterprise satisfies

21  the dangerousness prong as well.

22        As I mentioned, the defendant is caught on numerous

23  intercepts with Mr. Tokhtakhounov, including discussions about

24  extorting money through the threat of force.  We believe

25  that's dangerousness.  This is an international conspiracy

1 that uses fear from this very high level person to get people

2 to pay.

3           With respect to risk of flight, the defendant

4 himself has set forth in the Pre-Trial Services report has

5 extensive connections to the Ukraine, Russia, France, and

6 Israel.  He's a dual citizen I believe of Israel and the

7 United States.  If he were bailed, we believe he would run.

8           He has close connections, as I mentioned to Mr.

9 Tokhtakhounov who is a man of immense wealth and power in the

10 former Soviet Union who can easily help him hide.  Mr.

11 Tokhtakhounov has been under indictment publicly since 2002

12 and living freely.  He is also an Israeli citizen, meaning Mr.

13 Golubchik, and Mr. Golubchik owns property in France.  He was

14 arrested soon after coming back from a long international trip

15 from France and Israel, and he spends substantial amounts of

16 time, for example, in Monaco as well.

17           We believe that if he is bailed, he will leave and

18 go, use the protections and money afforded to him by the other

19 members of this conspiracy to leave the United States.

20           As I mentioned, this is a large-scale money

21 laundering operation.  As you can see, just from what he's

22 revealed to the Court, has a large amount of assets.  He

23 personally has been involved in laundering tens of millions of

24 dollars from Russia to shell accounts in Cyprus into the

25 United States.  We believe that there is money, we've already

1  seized money in Cyprus that belonged to this organization, and

2  there is much more over there we believe.

3         His access to funds is so great that, for example,

4  he and Mr. Trincher provided payment to Mr. Tokhtakhounov, the

5  vor, of $10 to $12 million in a few-month period simply for

6  Mr. Tokhtakhounov providing his services which are effectively

7  to extort payments from people.

8         The defendant lists as his employment on the Pre-

9  Trial Services report Haggert Realty.  This company is a

10  complete fraud.  It is used to launder money.  It is the shell

11  company where the money that is laundered lands in the United

12  States.  As I mentioned, the money starts in Russia.  They

13  move it here for safekeeping we believe.  It goes through

14  shell accounts in Cyprus.  Sometimes it goes directly to Mr.

15  Golubchik, sometimes it goes into Haggert Realty, and that

16  money is washed through this real estate company so it comes

17  out, for example, as rental (inaudible).  It used to be

18  illegal gambling money.  It now comes out as rental payments,

19  hedge fund dividends, for example.

20         Another example to access to cash overseas, during

21  our investigation we've learned of Mr. Golubchik being

22  involved in picking up cash in Kiev.  This is an international

23  organization with close ties overseas and large amounts of

24  money at his disposal.

25         As Your Honor noted, he's charged in many counts.

1    He faces up to 90 years of prison.  We have unbelievably

2    strong evidence again the defendant.  As I mentioned, there

3    are Title III wiretaps, there are search warrants of email

4    accounts, massive bank record discovery; over 360 bank

5    accounts we've been through.  We believe that we have more

6    than a solid case against the defendant.

7           Finally, and this relates to both the money

8    laundering and risk of flight.  The defendant has an ownership

9    interest in two companies, one called Skyway, one called

10   Monarch.  These are airplane companies.  They have a

11   legitimate purpose in that they are airline companies.  They

12   were also used to wash money in the United States.

13          Owning an airplane company allows you obviously to

14   leave quite easily.  The airplane company not only was used

15   for laundering money; in 2011 Miami customs discovered 16

16   kilos of cocaine on one of these planes.  We do not believe

17   this business is legitimate.  Realistically it is used to

18   launder money and it provides him the opportunity to flee.

19          And, finally, just in terms of – to come back to

20   where the defendant's codefendant Mr. Trincher stands, he was

21   detained on these exact same arguments by Judge Francis.  We

22   see no reason why he should be treated differently, and we're

23   obviously happy to answer any questions about the facts.  I

24   know this is all coming to you.  Poor Judge Francis had the

25   privilege of presenting 20 defendants, he got pretty familiar

1  with these facts.

2           THE COURT:   When you say the facts are identical to

3  the facts on which basis someone else was detained, I'm

4  assuming different people have different kinds of ties to

5  different countries.  You're saying the other person who was

6  detained was very similarly situated?

7           MR. NAFTALIS:   Yes, foreign ties, ability to access

8  funds overseas.  He has ties to the Ukraine, Russia as well.

9  He has access to millions of dollars as well.  He is equally

10 in contact with Mr. Tokhtakhounov.  He is also charged with

11 extortion.  He faces the same amount of jail time, 90 years.

12 They are charged in identical accounts in the indictment.  And

13 they, as alleged in the indictment, are the two of the three,

14 meaning Mr. Trincher and Mr. Golubchik are two of the three

15 leaders of this RICO conspiracy.  Thank you, Your Honor.

16           THE COURT:   Counsel.

17           MR. LICHTMAN:   Good morning, Your Honor.  First of

18 all, as the prosecutor said, comparing Trincher to the

19 defendant, obviously the circumstances should not be identical

20 because there are factors in 3142(g) that specifically relate

21 to each individual.  So, yes, they're charged in some of the

22 same crimes; they're not charged in the exact same crimes in

23 the indictment to begin with.

24           Also, what the prosecutor didn't mention is that Mr.

25 Trincher, when he made his bail application, from what I

1  understand, did not put forth a package, did not put forth a

2  package that was arguing these issues and did not set forth a

3  package.  The law is clear, it's their burden on both

4  dangerousness and with regard to flight, and it's got to be,

5  at least in terms of dangerousness, where there's clear and

6  convincing evidence that there are no conditions or

7  combination of conditions which will reasonably ensure the

8  safety of the community.  When you don't put forth a package

9  of conditions, it's a little difficult for a judge to be able

10 to make such a determination.

11        So to compare the two and say that they're identical

12 and say that there's some sort of precedent that was set in

13 that last bail hearing makes no sense based on 3142(g); it

14 makes no sense based on the fact that there are different

15 charges in the indictment with each one; and the fact that

16 there was no attempt even made to discuss a bail package which

17 would ensure both the appearance and the safety of the

18 community.  That's the first thing.

19        Clearly, the Bail Reform Act says that bail should

20 be granted except in most extraordinary circumstances.  Only a

21 small number of people should not be getting bail.  Let me

22 start with flight, if I can, Your Honor.  Let me just also, if

23 I can, talk about the package that we're willing to put up.

24 You should also note that this man has no criminal record.  He

25 has no family abroad.  He's an American citizen for 15 years,

1  lives in this community with his wife who's here, two

2  children, one is an eight-year-old daughter.

3          In addition, the homes that we're willing to put up,

4  we're asking for a $3 million bond, Your Honor, secured by two

5  properties.  One is the family home which houses his son, his

6  eight-year-old daughter, and his wife.  The other home is in

7  Brooklyn and houses his mother-in-law.  In addition, we have

8  four financially responsible cosigners.  One is a doctor, one

9  is an NYU project manager, an accountant.  We have people that

10 are willing to put their lifesavings on the line for this

11 defendant.

12         In addition, we are offering home confinement with

13 electronic monitoring.  These are all things that were not

14 discussed in Mr. Trincher's bail application.  So I would

15 submit on its face at least there's quite the difference.

16         Now, if we can talk about the flight risk argument.

17 This is not Bernie Madoff or Mark Dreier.  You heard the

18 prosecutor, with all respect, struggling to distinguish

19 between the top of the indictment, a man who's been under

20 indictment since 2002, and the defendant.  The fact is they

21 are completely different people.  This is not a Dreier or a

22 Madoff who had exponentially the amount of money at their

23 fingertips than this defendant is alleged to have.  This isn't

24 someone who's been accused of engaging in fraud like those

25 two, who has a track history of lying.  We haven't heard

1  anything about any fraud.  We also haven't heard anything

2  about fabricating any documents or fabricating any

3  identifications.  Or when he was arrested, there weren't

4  multiple passports in different names with his picture on it.

5  None of the indicia of someone who is willing to fly.

6          Instead, we've got someone who's got family, a long

7  history in the community, and an eight-year-old daughter, Your

8  Honor.  With no family abroad, again.  This is not someone who

9  has shown any ability or propensity to fool people at a very

10  high level the way a Madoff and Mark Dreier have, who has a

11  history of lying to the SEC or other governmental agencies.

12          Now, Madoff and Mark Dreier were ultimately

13  determined to not be flight risks to the point that there were

14  conditions that could guarantee their safety, and sure enough

15  that did occur, despite their massive international travel,

16  homes, and assets in other countries.

17          Now, as noted before, the Government has to show

18  that the defendant poses an actual risk of flight, an actual

19  risk of flight.  But based on what?  He's Russian.  He's got

20  connections with somebody, a shadowy person on top of the

21  indictment who's been a fugitive, been under indictment since

22  2002.  He travels a lot, has international resources.  But

23  they can show you nothing that shows he's an actual flight

24  risk.  What can they point to?  Can they point to the

25  identifications?  Can they point to lying to the government?

1    Can they point to anything like that?  Can they point to the

2    fact that he ever lied to a court or didn't show up when he

3    was supposed to?  No, because he's never even been arrested,

4    Your Honor.

5            And, in addition, with regard to the fact that he's

6    an Israeli citizen as well, dual citizen, he volunteered his

7    passports when he was arrested.  He gave them up.  They have

8    them right there.

9            Now, even if the Government could show that he poses

10   an actual flight risk, they have to then show that there are

11   no conditions, no conditions or a combination that would

12   reasonably, reasonably assure his presence in court.  Well,

13   what about house arrest with electronic monitoring?  Does that

14   just get discounted?  We don't even discuss it?  We just go

15   right from A to Z and remand?  Putting up his home where his

16   family and his young child live and where his mother-in-law

17   live?  And what about the cosigners on the bond?  We just

18   discount them?  That's moral suasion, Your Honor, that keeps

19   the man in the country, in addition with the electronic

20   monitoring.  And, Your Honor, we're willing to agree to a GPS

21   monitoring as well, not just the regular ankle bracelet.

22   We're willing to agree to GPS as well.

23           Now, if I can, Your Honor, I'm going to compare a

24   couple of cases recently in the Southern District of New York

25   for precedential value which I believe actually has at least

1    as much relevance to someone who didn't even put forth a bail

2    package previously.

3            Chan Min Fang was charged at the end of January in

4    this courthouse and appeared for bail in this courtroom.  He

5    was charged with involvement of $1.7 billion accounting fraud

6    in the Southern District, as I said.  Judge Swain granted him

7    bail even though he was, A, a citizen of Taiwan, B, lived in

8    Singapore, and made $10 million in the scheme and had that

9    kind of money.

10           Mr. Golubchik, on the other hand, has been an

11   American citizen for 17 years, lives in Jersey, as repeatedly

12   noted, with his wife and two children, one being the eight-

13   year-old daughter, and has no family abroad, and is not

14   charged with lying or any other fraud.  And the lying and the

15   fraud I think is important because it goes to trustworthiness

16   to respect the government and to respect the Court's order.

17           In addition, we have a Varujan Amroyan.  Judge Fox

18   granted him bail.  He was an Armenian citizen who was a member

19   of a violent organized crime enterprise which used quote, and

20   I'm taking from their press release, "violence and threats of

21   violence to ensure respect for and payments to its

22   leadership."  There was a RICO charge in that case which

23   included $100 million Medicare fraud as one of the charges.

24           Members of the conspiracy were alleged to have

25   threatened to "disembowel a criminal associate who owed

1  money." There were also discussions of killing an associate

2  who failed to show the proper respect.  As for this Amroyan,

3  besides not being an American citizen, he had a massive

4  criminal record, unlike this defendant.

5           First, he committed the offense while he was on

6  probation on another conviction, which showed a lack of

7  respect obviously to court orders, Your Honor.  He was

8  convicted of making a false statement on a currency

9  transaction report and served time in jail.  Again, lying.

10 Don't have that here.

11          He was also convicted of lying on his tax returns.

12 We don't have that here either.  Fraudulent credit cards, we

13 don't have that either.  All of these crimes obviously show

14 dishonesty.  In addition, you have the fact that he had no

15 respect for a court's order.

16          He used aliases in connection with the crimes he

17 committed and was found in possession upon his arrest of

18 identification documents with his pictures on them but with

19 other names.  And he was arrested with fake credit cards.

20 That's an actual flight risk because you're seeing someone who

21 has clearly made attempts to be ready to run.  We have none of

22 that here.  None of that here.  Zero, nothing.  Nothing.

23          Now, you look at the difference in the case before

24 you, as I said, he's an American citizen.  There's no

25 allegations of fraud.  This, in essence, is a gambling case.

1    This is a gambling case with a charge, a couple of charges of

2    extortion of which he's charged in one extortion conspiracy.

3    And I'm not going to get to dangerousness just yet, or maybe I

4    will a little bit.

5            There are actually specific extortions in this case

6    - client 1, client 2, client 3.  He's not charged with

7    involvement.  I believe the Trichner, the other fellow with

8    the identical charges, except that they're not, was actually

9    charged with one.  He's not charged with any specific

10   extortion.

11           Basically, what the claim is this, Your Honor, he's

12   part of this massive criminal organization that used fear to

13   get people to pay the debts from gambling.  Well, if he's

14   released, who's betting?  What evidence has there been shown

15   that this organization obstructs justice or that hurts people

16   for any other reason other than attempting to get paid?  Are

17   there any allegations of guns being used and anybody being

18   hurt, of weapons being brandished?  No, just a lot of smoke

19   and mirrors.  There's something there, I'm not discounting it,

20   but it's not to the level that there are no conditions which

21   could possibly assure, reasonably assure the safety of the

22   community and it's not a surprise that Pre-Trial Services came

23   back and recommended bail, Your Honor.

24           Now, as I said, none of the red flags exist in those

25   other cases that I've cited, and the Government has also

1   frozen multiple bank accounts of this defendant.  All of his

2   money in America has basically been frozen; over a million

3   dollars has been frozen.  Properties have been frozen.  So

4   that certainly, in addition, negates his ability to run.  It

5   does.  It's a fact.

6           Now, with regard to the danger argument, I touched

7   on it a little bit, they have to show by clear and convincing

8   evidence, again, that there's no condition or combination of

9   conditions that would assure the safety of the community.

10  Again, he's one of the heads of a large betting ring, but as I

11  said, no violence has been alleged in the indictment and not

12  against him specifically, and that's important.

13          In addition, there is no allegations of obstruction.

14  You have organized crime after organized crime case, Your

15  Honor, in which defendants are bailed.  Tons.  I would be here

16  until tomorrow if I gave you a list.  I've represented many of

17  them.  That is an organization, the mafia, in which violence

18  is part of everything.  Obstruction of justice, there is not a

19  single organized crime family in this area that there have not

20  been allegations by a prosecutor in a bail hearing in which

21  they've said they have obstructed justice, they have gone to

22  jurors, they have killed witnesses.  There is no allegation

23  about that here, nothing.

24          This is a large-scale, allegedly, betting

25  organization that laundered tens of millions of dollars.  You

1  can't compare that to an organized crime family that has as

2  one of its mechanisms getting rid of witnesses, obstructing

3  justice, going to jurors.  You can't compare these two

4  organizations; they're simply not the same.

5         Now, if I can, Your Honor, I would bring up the

6  DeFranco case, an organized crime case in January 2013 in

7  which bail was granted to a number of defendants, and, again,

8  there was violence charged, there was RICO charged with

9  respect to the Genovese family in which obstruction of justice

10 has routinely been employed.  Not a single mention of that

11 here.

12        So, Your Honor, what I would say, again, the fact

13 that we've got a significant bail package, which is completely

14 different than what the defendant who was denied bail, who

15 will be making another bail application, Judge, this time

16 perhaps with a package to present -- $3 million bond, secured

17 by the two family homes.  All of his relatives in the area

18 live in these two homes.  Both of those will be posted.

19        Home confinement with strict electronic monitoring.

20 He can only leave to come to his lawyer.  He can wear a GPS,

21 Judge, which would ratchet up the level of detection by the

22 Government not just the bracelet.

23        Four financially responsible cosigners of the bond.

24 They're here.  We could probably get more.  I could probably

25 have five or six that are here right now.  I offered four.  If

1   Your Honor thinks it's better, we can have more.  All travel

2   documents have already been voluntarily turned over.

3          And I would say to Your Honor this, there was

4   mention about a plane company.  The plane is shut down.  The

5   Government neglected to mention that.  Doesn't exist anymore.

6   The fact that there was cocaine that was found on the plane,

7   was there any allegation t++hat it was to people that had

8   ownership interest in the company?  Because if that's the

9   case, every time you have a private plane company and some

10  criminal takes a plane and moves cocaine with it, what, they

11  arrest the person who owns the company?  No, it's the person

12  who rents the plane.  Where's that charge?  It doesn't exist.

13         It sound good on its face, Judge, but when you

14  actually peel it back and you put them to their burden, clear

15  and convincing evidence with regard to danger, that no

16  conditions can reasonably assure the safety of the community,

17  and that by a preponderance of the evidence that there is no

18  reasonable probability that he will show up in court, you

19  know, just does not pass muster when you consider the

20  significance of the package that we have here.  Thank you.

21         MR. NAFTALIS:   Your Honor, briefly.  This is a

22  release hearing case.  The defendant faces 90 years of jail.

23  There's money laundering, there's extortion.  The defense

24  counsel is just wrong.

25         The defendant is charged in count 1 with

1    racketeering Act 2 with extortion, and count 8 with extortion.

2    The --

3              THE COURT:   I'm sorry, what was counsel wrong

4    about?

5              MR. NAFTALIS:   He said that there was no – the

6    defendant's not charged with any extortion.  I did say --

7              MR. LICHTMAN:   I didn't say that.  I said a

8    specific victim was not named.  There are specific victims

9    named as extortion victims in this case.  I said he was

10   charged with extortion conspiracy, which is what he is.

11             MR. NAFTALIS:   I don't understand the difference.

12   But, Your Honor, the defendant --

13             THE COURT:   Well, I haven't --

14             MR. NAFTALIS:   The defendant is charged with

15   extortion.

16             THE COURT:   I haven't been through this indictment.

17   I'm new to this case.  So tell me this, apart from naming this

18   defendant in conspiracy charges, can you give me some idea of

19   what you have that describes this individual's particular

20   conduct that should sound particular alarms for me regarding

21   his danger to the community?  In other words, sometimes I

22   have, well, this person's role was to do this, this was the

23   person who would go with a gun to somebody and put the gun to

24   their heads.  You know, this person was the person who would

25   do something else in connection with an overall conspiracy.

 1          So if you have particular, any particular proffer to

 2   make as you chose about this particular person's role that

 3   would make him a particular danger other than being a

 4   coconspirator, which I understand he can be in a number of

 5   ways, maybe you can expand.

 6          MR. NAFTALIS:   The answer is, notwithstanding the

 7   defense counsel's suggestion that this man is not at the top

 8   of the indictment, he is at the top of the indictment.  He and

 9   the three people at top direct people below.  He is, as an

10   example, on the wire, he is caught speaking to Mr.

11   Tokhtakhounov about Mr. Tokhtakhounov saying, you know what,

12   this guy owes us some money.  I'm gonna make him give us a car

13   too because he's so afraid of me that they're gonna pay us

14   more, that they will threaten him to pay more than the debt

15   owed, and the two of them are talking about this (inaudible).

16          There are people working below Mr. Golubchik who are

17   the enforcers, the collectors.  The suggestion that since

18   you're at the top, you're not danger puts it on its head.  If

19   you're the people directing the collection, you're just as

20   dangerous, which is why he is charged with both extortion and

21   conspiracy --

22          THE COURT:   Is it your understanding that this

23   defendant was acting from within the confines of his home by

24   phone perhaps or computer to direct conduct of others in other

25   places?

1          MR. NAFTALIS:   Yes, Your Honor, he has two to three

2   apartments in the New York area, he worked almost exclusively

3   from there is what we understand.  So if you lock him in his

4   house with his computers, he's gonna be in continual contact

5   with anyone.  Because he doesn't have a real office; his job

6   is to commit crimes.

7          THE COURT:   Is it your understanding he worked by

8   phone?

9          MR. NAFTALIS:   He worked by phone and compute and

10  Skype.  With respect to the list of precedents that the

11  defense counsel was laying out, this is not a fraud case, he's

12  right; this is an organized crime RICO case.  This is not a

13  Dreier case; this is a man who associates and is an associate

14  with a RICO enterprise.

15         I could list a number of people who are bailed by

16  this court.  You know does this every day.  The person in the

17  exact same or the most similarly situated situation is Mr.

18  Trincher.  And there was a bail argument that was hotly

19  contested, and Judge Francis ordered him remanded.

20         In addition, there are no -- what defense counsel

21  points out, there are no indicia of flight.  There are indicia

22  of flight.  Do I not have a fake ID right now?  No, but it's

23  very easy to get.  He has lied to Pre-Trial Services.  He does

24  not list all his assets, for example, and just as an example,

25  he owns apartments in New York.  It's not listed there.  There

1   was a search warrant on one of his New York residences.  It

2   isn't even here.  I withdraw that, it's listed as Haggert

3   which is the shell company that they laundered the money

4   through.

5            I should say there's another company called --

6            THE COURT:   I'm sorry, what's listed as what?

7            MR. NAFTALIS:   His assets include New York City

8   properties.  They're not listed in his financial assets.

9            THE COURT:   You're looking at a financial

10  affidavit?

11           MR. NAFTALIS:   I'm looking at --

12           THE COURT:   Or the Pre-Trial Services report?

13           MR. NAFTALIS:   -- page 2 of the Pre-Trial Services

14  report.

15           THE COURT:   So when you say something is listed as

16  something, what're you talking about?

17           MR. NAFTALIS:   I said he doesn't disclose as asset

18  being his homes in New York.  The Agent Hanratty points out

19  that he does list the address as the address of Haggert

20  Realty.  The address, as you'll note, for the business is an

21  apartment because he runs this shell company, his money

22  laundering vehicle out of his homes.

23           There's another company which is extensively noted -

24  I know Your Honor is, it's a very long indictment.  There's a

25  company called Villanova Properties which is an American-based

1  real estate company that Mr. Golubchik operates with the other

2  lead defendants to launder money.  That is another huge

3  vehicle the defendant uses.

4       The suggestion that he's not - that you can create a

5  package to keep him here is made by every single defense

6  lawyer who wants his client bailed.  And he did not address a

7  single fact --

8       THE COURT:   Well, some are bailed and some are not

9  bailed.

10      MR. NAFTALIS:   Some are bailed and some are not.

11 He did not address a single fact related to his client.  For

12 example, his relationship overseas with Russia.  He simply

13 said people are bailed and you can create bail conditions that

14 keep you home.  That argument, while that argument works when

15 there are facts that support it, there are no facts here, Your

16 Honor, respectfully, that make this defendant any different

17 from Mr. Trincher, and the arguments that he is not an insider

18 trader or a ponzi schemer just have no weight here.

19      He is a dangerous man.  He is charged with extortion

20 which none of the defendants in the Dreier example obviously

21 were charged with.  Those men are at the top of the

22 indictments because they were charged alone I believe.  I just

23 don't see anything - it's a clear case in the Government's

24 position for remand.  The Government only sought remand in a

25 couple of situations.  We were very conservative.  Thirty-four

1  people charged, 33 arrested, the one fugitive being Mr.

2  Tokhtakhounov.  We sought remand with respect to Mr.

3  Trincher.  He was remanded.  We sought remand with two

4  others.  Both of them are detained until they meet their

5  bail conditions.  With respect to 90 percent plus, we --

6       THE COURT:  I'm sorry, you sought detention for a

7  few people, two of whom conditions were set, for two of whom

8  conditions were set, but they haven't met the conditions

9  yet, one of whom was remanded?

10       MR. NAFTALIS:  One of them was remanded straight

11  out; that's Mr. Trincher.  We sought detention with respect

12  to another individual who is in a different part of this

13  conspiracy who was actively involved in the extortion.  He

14  is still remanded; his name is Mr. Azen.

15       THE COURT:  But conditions were set?  You just

16  said that because they haven't met their conditions yet,

17  suggesting conditions were set.

18       MR. NAFTALIS:  Yes, I mean that individual is in

19  a different situation.  A million dollars' bond, four

20  cosigners --

21       THE COURT:  So judges have sometimes agreed with

22  you and sometimes not agreed with you is what it sounds

23  like, on the people you picked to push for detention.

24       MR. NAFTALIS:  Yes, I mean candidly yes, but with

25  respect to Mr. Trincher, I did not hear defense counsel make

1  any effort to distinguish (inaudible) other than the fact

2  that they have different names.  They're in the exact same

3  counts, except for this (inaudible) 3-1 where they extort an

4  individual which --

5          (interposing)

6          THE COURT:   Okay, let me ask a couple of specific

7  questions to each of you.  On defendant's side don't know

8  obviously what's true and what's not true, but the

9  allegation is that your client has used his phone and

10  computer and Skype in order to be involved in illegal

11  activity, including directing extortion activities and

12  things of that nature.  If he were at a residence on

13  electronic monitoring, what would we do about his access to

14  phone, computer, Skype, and so on?

15          MR. LICHTMAN:   Your Honor, that was the first I

16  heard about it, that's why I didn't address it when we

17  first, when I first started speaking.  Obviously, first of

18  all, the computers have all been seized.  Secondly, no new

19  computers --

20          THE COURT:   There's no computer in the home?

21          MR. LICHTMAN:   The computers in the home were

22  seized upon arrest from what I understand.  No new computers

23  would be purchased.  There would be no access to the

24  internet.  The phones, if Your Honor would want the phones

25  to be monitored, we would agree to that.  That takes away

1  nearly half of what was just said.  In addition, any other

2  electronic monitoring that Your Honor deems is required we

3  would agree with.

4       So I don't know how you're going to be able to

5  claim with a straight face there are no conditions that

6  would reasonably assure the safety of the community because

7  of computers when computers are not going to be in the home.

8       If I can, Your Honor, just briefly, I don't want

9  to go on, but to bring up the Dreier and Madoff cases, I was

10 bringing them up on the issue of flight.  The fact that they

11 weren't charged in a violent RICO case with extortion is of

12 no moment to what the point I was making.  That was just on

13 the issue of flight.

14      So, Your Honor, with regard to Trincher, again,

15 what I would say, the reason why I brought that up is

16 because there was a specific, specific crime charged against

17 Trincher with extorting a specific person, and that was one

18 of the differences.  We heard – he's not charged with any

19 specific person being extorted.  He's charged with the

20 conspiracy.  We even heard from the prosecutor, I don't have

21 the benefit of these zillions of tapes.  Well, he's speaking

22 on the phone with the head of the organization and the

23 organization says I'm gonna do this, I'm gonna do that.

24 Well, we're still waiting to hear what is the allegation

25 what he specifically said.

1         I'm not saying that that doesn't put him into a

2   conspiracy.  We're not arguing guilt or innocence now.

3   We're arguing whether there are conditions or any

4   combination of conditions which would reasonably assure the

5   safety of the community --

6              THE COURT:   Okay.

7              MR. LICHTMAN:   -- and they've come up with zero

8   now with two specific showings that they've tried to make.

9   It just doesn't exist.  The fact are conditions exist.  We

10  are willing to have the computers monitored.  We're willing

11  to have the phone monitored.  He's putting up all the homes

12  that the family lives in.  Your Honor, I just don't think

13  with a straight face we can say that the dangerousness that

14  exists here exceeds the cases that I cited for danger, not

15  for risk of flight.  It just doesn't exist.

16             THE COURT:   Wait a minute, where does this

17  defendant live?

18             MR. LICHTMAN:   He lives in Fort Lee, Your Honor.

19             THE COURT:   He lives at the 900 Palisades Avenue

20  apart --

21             MR. LICHTMAN:   Yes, Your Honor.

22             THE COURT:   -- home?

23             MR. LICHTMAN:   With his wife and two children.

24             THE COURT:   And what is the 330 East 75th Street -

25  -

1          MR. LICHTMAN:    Excuse me, Your Honor.

2          THE COURT:    The 330 East 75th Street property,

3  that's not residential?

4          MR. GOLUBCHIK:    It's residential.  My wife use it

5  because it's close to my daughter's school.

6          MR. LICHTMAN:    It's a residential property, Your

7  Honor, that he owns as well.

8          MR. GOLUBCHIK:    It's close to my children, my

9  daughter's school.

10          MR. LICHTMAN:    It's close to his daughter's

11  school where she goes which is why they have that apartment

12  there as well.

13          THE COURT:    I did take the Government's point

14  that at least in the Pre-Trial Services report that's listed

15  as the address of defendant's employer and not listed as an

16  asset.

17          MR. LICHTMAN:    It's actually a rental, Your

18  Honor, I just learned.

19          MR. NAFTALIS:    Just to clarify, he owns another

20  apartment on East 76th Street which is not listed.  So he

21  rents one on 75th but he owns one on 76th.  So the 76th one is

22  the one that's not listed.

23          MR. LICHTMAN:    Your Honor, I don't have any --

24          THE COURT:    Let me ask a different question.  For

25  Pre-Trial, GPS, what do you do and not do these days with

1  GPS monitoring?  Is that something that you've been doing?

2  I can't recall.

3          PRE-TRIAL SERVICES AGENT:  Yes, we're doing GPS,

4  Your Honor.  But he would probably be supervised by the New

5  Jersey office, and I believe that they do GPS as well.

6          THE COURT:  All right, and telephone monitoring,

7  that's not something that you'd like to undertake.

8          PRE-TRIAL SERVICES AGENT:  No, we don't do that.

9          THE COURT:  So what do you do, if anything, if

10  there is concern that a person may be engaging in unlawful

11  activity by using a phone in their residence?  Are there any

12  conditions you recommend?

13          PRE-TRIAL SERVICES AGENT:  We have no way of

14  monitoring that.

15          THE COURT:  Does the Government sometimes do

16  that?  Sometimes set up monitoring like with knowledge to

17  the defendant?

18          MR. NAFTALIS:  I don't know --

19          THE COURT:  You don't know what they --

20          (interposing)

21          MR. NAFTALIS:  -- wiretapping.  (inaudible)

22          MR. LICHTMAN:  Your Honor, if I can, I've been

23  involved in numerous cases in which the Government has

24  monitored phone calls.  So I don't know if it's run through

25  Pre-Trial Services, I wasn't aware, but I can tell you there

1  are cases in which the Government has the ability to monitor

2  --

3          THE COURT:  Yeah, it was my understanding Pre-

4  Trial wouldn't do that.  So if that is something to be done,

5  it wouldn't be a condition set up and supervised by Pre-

6  Trial.  That would be something where consent would be given

7  to the Government to monitor it if the Government wished to

8  do so.

9          MR. LICHTMAN:  Which we would agree to.

10          THE COURT:  If the defendant owns a property on

11  76th Street, do you have an understanding of what the value

12  of that property is?

13          MR. LICHTMAN:  About $5 million, Your Honor.

14          THE COURT:  Clear of?

15          MR. LICHTMAN:  No mortgage, Your Honor.

16          THE COURT:  Well, I may have some

17  misrepresentations by the defendant then with respect to his

18  net worth as that would essentially triple, adding that in

19  would essentially triple the value that he set forward, just

20  that alone, which gives me some pause.  I mean you make a

21  persuasive argument that conditions may be possible here,

22  but I'm concerned that what sounds substantial, $3 million

23  and two homes --

24          MR. LICHTMAN:  Your Honor, that property has been

25  frozen.

1          THE COURT:    Which property, the 76th Street?

2          MR. LICHTMAN:    The property at 76th Street from

3   what I understand has been frozen pursuant to an order,

4   along with the properties in Florida have also been frozen.

5   The Sunny Isle of Florida vacation home, that's been frozen.

6   The only property that has not been frozen by the Government

7   right now is alleged to be direct proceeds is the home in

8   Fort Lee.

9          THE COURT:    So the only one available to use as

10  security would be the one in Fort Lee plus the relative's

11  home?

12         MR. LICHTMAN:    The one in Fort Lee which I think

13  the asset value is incorrect, from what I've been told.    In

14  addition, the home where the mother-in-law lives as well.

15         THE COURT:    What do you think the asset value is

16  of the home in Fort Lee?

17         MR. LICHTMAN:    1.7, and the property in Brooklyn

18  is 400,000.    And we've also got the four cosigners.    I'm

19  willing to up the amount of the bond which would lock in the

20  cosigners as well for that higher amount.

21         THE COURT:    You're willing to up it to what?

22         MR. LICHTMAN:    Ten million?

23         THE COURT:    Well, all right, I have a lot of

24  things on the calendar today, so I think I need to bring

25  this to an end.    Both counsel are right that sometimes the

1  court has released people with substantial assets and ties

2  to other countries, with stringent conditions generally, and

3  sometimes the court has not.  I mean just because someone

4  has a lot of money and a lot of contact to other

5  jurisdictions doesn't necessarily mean that conditions

6  cannot be set if they are sufficiently stringent, and I

7  think that defendant's counsel was pretty persuasive here

8  that conditions can be set.  But I'm going to set conditions

9  that are very significant, and I'm going to require that all

10 conditions be satisfied prior to release.

11         If defendant is willing to have a $10 million bond

12 and if defendant thinks that he can get cosigners for that,

13 I'm going to go for that.  It seems that with the potential

14 underreporting of assets, erring on the side of a higher

15 bond is sensible.

16         MR. NAFTALIS:   Not to revisit it, but in addition

17 to not disclosing his home, he has substantial real estate

18 assets which is (inaudible) not disclosed either.

19         THE COURT:   Ten million dollar bond with

20 cosigners seems to me quite substantial.  Given the amount

21 of this bond, we're going to have five cosigners, secured

22 by, I can either do it by a dollar amount of equity in

23 property or I can list particular properties.

24         MR. LICHTMAN:   (inaudible)

25         THE COURT:   In terms of security, for property I

1  can either say secured by at least X amount in equity or I

2  can say secured by particular properties.

3          MR. LICHTMAN:   I would ask that the two different

4  properties, Your Honor.

5          THE COURT:   All right, give me the two addresses

6  again, 900 Palisades Avenue is one?

7          MR. LICHTMAN:   900 Palisades Avenue in Fort Lee,

8  New Jersey.

9          MALE:   It's 100 Ocean Drive West in Brooklyn, New

10  York.

11          MR. LICHTMAN:   It's 100 Ocean Drive West in

12  Brooklyn.

13          THE COURT:   All right, I'm going to indicate home

14  detention, I'm sorry, home incarceration rather.  That's

15  lockdown.  Home incarceration with electronic monitoring and

16  GPS.  I'm going to indicate strict Pre-Trial supervision.

17  You said passports were already surrendered.  You may not

18  apply for any new passport at this time.  To the extent that

19  there's any reason to leave the residence, that would be

20  only with permission of Pre-Trial Services and only to the

21  Southern and Eastern Districts of New York and the District

22  of New Jersey, assuming that that is where you are staying.

23  But this is not – home detention is you can leave to go to

24  work and otherwise your home.  This is your home and nowhere

25  else, except with specific notice to and permission of Pre-

1  Trial Services.

2          MR. LICHTMAN:   Does that include medical and

3  legal visits, Your Honor?

4          THE COURT:   Well, I think Pre-Trial Services can

5  be notified.   Whatever goes along with home incarceration,

6  how does that generally work?

7          PRE-TRIAL SERVICES AGENT:   Yeah, he would be

8  allowed out, after confirmation, he would be able to --

9          THE COURT:   For a lawyer visit or a medical

10  visit?

11          PRE-TRIAL SERVICES AGENT:   For (inaudible) and for

12  medical.

13          THE COURT:   But you need confirmation, Pre-Trial

14  Services needs confirmation as to what's happening.

15          PRE-TRIAL SERVICES AGENT:   Correct.

16          THE COURT:   All right.

17          PRE-TRIAL SERVICES AGENT:   Your Honor, could you

18  also travels to New Jersey since --

19          THE COURT:   I did say New Jersey.  I'm just

20  taking a look for a moment at my notes.  My understanding is

21  there are no computers currently in the home, that would

22  include not just a laptop computer or a tablet, blackberry,

23  things that are, you know, things that have computing

24  capability.  If that's not correct, I'd kind of like to know

25  what there is so we know what kind of access there is.

1    Computers can be small and computers can be large.

2              MR. LICHTMAN:   That's a good point, Your Honor.

3    Would that ostensibly include like a smart phone if a son

4    who lives in the home, all their phones would --

5              THE COURT:   Well, would everyone who lives in

6    that home be willing to, on a voluntary basis, have the

7    Government monitor calls if the Government wished to do so?

8              MR. LICHTMAN:   Yeah, Judge, I think that's fine.

9              THE COURT:   So no new computers without raising

10   it with the Government first and getting leave of court.

11             MR. LICHTMAN:   And, Your Honor, if I can just to

12   sort of put it out there so I don't have to come back, I

13   don't know what the schooling situation is for the children.

14   So if there needs to be computers used for the kids, we

15   would obviously go to the Government first and give them

16   access to anything on that computer, the ability to search

17   that computer whenever needed.   But I wouldn't obviously do

18   it until we went to the Government --

19             THE COURT:   You said as far as you know all the

20   computers in that home have been seized?

21             MR. LICHTMAN:   Correct.

22             THE COURT:   All right, so the record will reflect

23   that.  I'm saying no new computers without notice to the

24   Government and leave of court.  So you can explain the

25   situation to counsel, you can write to the court, you can

1  write to me since I was the one who did the argument.

2  Remind if I say I should go to the duty person that I said

3  that.  And investigate the situation with smart phones,

4  raise with the Government if you see any issue, get back to

5  me if you see any issue.

6      I'm indicating voluntary – I'm sorry – defendant

7  and family, based on your representations, consent to

8  Government monitoring of all phones in the home.  If that's

9  not right, once again, please raise it.

10      MR. LICHTMAN:   That's fine, Your Honor.

11      THE COURT:   Pre-Trial Services recommends

12  prohibition from gambling.  Now, if he's home, he's not

13  going anyplace with his gambling.  If he's not online, he's

14  not gambling online.  So I'm not sure that that is needed as

15  a condition.  I'm not sure the issue here is really his

16  gambling as the Government has described it.  So I'm not

17  going there.

18      All right, let me just say this to – yes.

19      PRE-TRIAL SERVICES AGENT:   You also mentioned

20  too, I thought before you – that (inaudible).

21      THE COURT:   I've got no computers.  So without

22  computers how do I have the internet access?  Should I say

23  specifically --

24      (interposing)

25      PRE-TRIAL SERVICES AGENT:   Well, I was thinking

1  that's, you know, I'm not saying that this is something that

2  this defendant would do, but you say no new computers, it's

3  really hard for us to actually monitor that condition if,

4  you know, (inaudible) --

5          THE COURT:   What would you suggest?

6          PRE-TRIAL SERVICES AGENT:   -- nowadays.

7          THE COURT:   Right, what would you suggest for

8  language?  No internet access?

9          PRE-TRIAL SERVICES AGENT:   (inaudible)

10         MR. NAFTALIS:   Your Honor, on the monitoring, as

11  you might imagine, this is a massive --

12         THE COURT:   Hang on just one second.  No internet

13  access in residence, again, without notice - the reason I'm

14  putting in without notice to Government and leave of court

15  is there may be other people in the home, including

16  children, who have school assignments or something.  It may

17  be easy enough to deal with if they go to a library or

18  something, but they may have computers even issued by

19  schools, who knows.  So just raise it with each other if

20  there is an issue and see what you can come up with.

21         With respect to monitoring, I'm not requiring

22  phone monitoring.  What I'm saying is that if the Government

23  wants to take that step given his professed importance in

24  this activity and his leadership role that you've described

25  in this activity, that from what I understand from

1  defendant's counsel, there is permission for you to arrange

2  for monitoring of these phones if you wish to do so.

3          MR. NAFTALIS:   Is he allowed to us the phone and

4  allowed to use the computer but we have to monitor it

5  because --

6          THE COURT:   Well, I don't have - as far as I

7  know, there's no computer.

8          MR. NAFTALIS:   Okay, but --

9          THE COURT:   So we're talking about a phone.

10          MR. NAFTALIS:   -- that he should be directed not

11  to use a computer and no phones because the burden on the

12  FBI to monitor all these phones and computers is a mess --

13          THE COURT:   Well, I'm not sure that I can

14  prohibit him from ever using a phone.  If there's an

15  emergency, medical situations, something else, I mean phones

16  can be people's lifelines.  I don't want to say he cannot

17  touch a phone.  I already have a situation where I'm being

18  told there are no computers in the home and no new computers

19  will be introduced into the home without it being raised and

20  discussed and brought back to me.

21          But what I'm saying is that there may be other

22  people in that home who have phones, who have cell phones,

23  and you may decided that it's not worth pursuing or you may

24  decide that it is, in excess of caution, to check in now and

25  then and see what's going on on those phones.  What I'm

42

1   saying is that as I understand it the family lives there are

2   giving voluntary consent to having the Government check in

3   on their phones if you wish to do that.

4           Now – all right.

5           MR. NAFTALIS:   But he shouldn't be using – my

6   point is the fact they're allowed, potentially he's allowed

7   to use them.  Like if he uses the kids' computers, that sort

8   of obviates the whole – because then we have – does that

9   mean --

10          THE COURT:   Well, I can certainly direct that to

11  the extent that the defendant is permitted to use a phone,

12  it should be only one phone, and he shouldn't be permitted

13  to use his kids' phone, wife's phone, his mother's phones,

14  other people's phones.  If he does, that's a violation.  But

15  I don't want to deprive him entirely of the ability to make

16  a phone call.

17          MR. LICHTMAN:   Could I make this easier, Judge?

18          THE COURT:   Yeah.

19          MR. LICHTMAN:   I think what makes sense is that

20  there would be one phone for his use, that he's allowed to

21  use, and that would be the phone that can be monitored, you

22  can direct the Government that would be the one that he'd be

23  using.  Other phones in the apartment, we've agreed to have

24  them monitored, but he'll only use the one phone.

25          THE COURT:   Right, that's what I was just saying,

1   which was that, look, if he has a family in the home who has

2   a separate phone, the Government, Pre-Trial Services can't

3   have eyes on him all the time to know that he didn't say to

4   the family member, hey, let me borrow your phone.  Right?

5   So if the Government wishes to monitor those other phones on

6   a random basis to make sure that he's not using them full-

7   time basis, random basis, anything the Government wished to

8   do, I understand that there is consent by these other family

9   members to let the Government do that.

10          But I'll set the condition that there be only one

11  phone that defendant is supposed to use, to the extent he's

12  using his phone, that he's giving consent for that one to be

13  monitored too if the Government wishes, and it would be a

14  violation of his conditions for him to be using anyone

15  else's phone.  So if he gets caught using someone else's

16  phone, it's not only the Government says, uh oh, this is

17  what's going on, but it's a violation of the conditions.

18          MR. LICHTMAN:    Understood.

19          THE COURT:    Okay?  Okay, so here's what I've

20  written, in addition to GPS monitoring, no new computers

21  without notice to Government and leave of court.  Defendant

22  and family consent to Government monitoring of all phones in

23  home.  No internet access in residence without notice to

24  Government and leave of court.  Defendant to use only one

25  designated phone to the extent he needs to use a phone.  All

44

1  right?

2          MR. NAFTALIS:   That's fine, Judge.

3          THE COURT:   All right, Mr. --

4          PRE-TRIAL SERVICES AGENT:   Your Honor, just to

5  clarify.

6          THE COURT:   Yes.

7          PRE-TRIAL SERVICES AGENT:   Is Pre-Trial

8  (inaudible) the internet access we ask that be removed from

9  the house or --

10          THE COURT:   I'm indicating no internet access in

11  the residence.   There should be no internet access in the

12  residence.

13          PRE-TRIAL SERVICES AGENT:   So we could get a

14  letter from like Time Warner or from whoever his internet

15  provider is stating that the internet is no longer at the

16  house?  Because that's usually what we do.   I mean we get

17  letters from the phone companies, you know, advising that

18  there's no internet access or it's removed, you know,

19  there's documentation --

20          THE COURT:   Okay.

21          PRE-TRIAL SERVICES AGENT:   Is that what --

22          THE COURT:   Yes, you would agree to that?

23          MR. LICHTMAN:   Yes, Judge.   The only thing that I

24  would say is that, again, with regard to the children --

25          THE COURT:   Again, if there's something that you

1  want to set up or have or there's some exception, you let

2  the Government know.

3          MR. LICHTMAN:   And, of course, we would agree to

4  monitoring of that device to be used by the children or by

5  the wife perhaps we would agree --

6          THE COURT:   Right now there's none.  Right now --

7          MR. LICHTMAN:   Understood.

8          THE COURT:   All right, the goal is that there

9  isn't any.  If there's some exception to be made for that

10  for some reasonable purpose, you raise it with the

11  Government, you set forth what you're talking about, you set

12  forth what you think a reasonable condition would be.  Right

13  now we're talking about none in the house --

14          MR. LICHTMAN:   Understood.

15          THE COURT:   -- and, as Pre-Trial says, with some

16  confirmation that if it's there, it's been removed, the

17  access is removed.

18          MR. LICHTMAN:   That's fine.

19          THE COURT:   All right?

20          MR. LICHTMAN:   Yes.  Your Honor, would you want

21  that letter before he's released?

22          THE COURT:   All conditions to be satisfied, so

23  all confirmation that needs to be done prior to release.

24          MR. LICHTMAN:   Fine.

25          THE COURT:   If you think for some reason this

46

1   oversteps what I'm permitted to do in setting conditions

2   under some case law, bring it to my attention.

3           MR. LICHTMAN:   Fine, Your Honor.

4           THE COURT:   All right, Mr. Golubchik, if I have

5   your name more or less correct.

6           MR. GOLUBCHIK:   Yes.

7           THE COURT:   Let me just caution you that I'm

8   setting these conditions, they're very stringent conditions

9   for you and they affect your family as well.  Assuming you

10  meet these conditions, you have to live by them.  If you do

11  not stay in your home, you know, do not follow Pre-Trial

12  Services directives, are found violating these conditions of

13  release, the situation will get worse than it is now for

14  you, undoubtedly so.  Certainly, if you do not stay where

15  you're supposed to, you can be charged with jumping bail and

16  you can face that as a separate crime, and it can be

17  prosecuted even if these other charges were to be dismissed.

18  Do you understand that?

19          MR. GOLUBCHIK:   Yes, I understand, you know.

20          THE COURT:   You also understand if you don't

21  appear when you're supposed to in court, you and whoever

22  cosigns this bond with you can be responsible for the full

23  amount of that bond.

24          MR. GOLUBCHIK:   Yes, I understand, Your Honor.

25          THE COURT:   All right.  Anything further?

47

1          MR. LICHTMAN:   Nothing from us, Your Honor.

2          THE COURT:   Okay.   Thank you both.

3        (off the record)

4          (Whereupon the above matter is adjourned.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

48

C E R T I F I C A T E

        I, Carole Ludwig, certify that the foregoing
transcript of proceedings in the United States District
Court, Southern District of New York, United States of
America v. Tokhtakhounov, et al., Docket #13cr268, was
prepared using digital electronic transcription equipment
and is a true and accurate record of the proceedings.




Signature_____

Date:  April 25, 2013